**Gary E. SCHWADRON, Plaintiff,**

v.

**TRANS WORLD AIRLINES, INC., Defendant.**

**Civ. A. No. 84-0257.**

United States District Court, W.D. Pennsylvania.

May 31, 1984.

Richard L. Schubert, Litman, Litman, Harris & Portnoy, Pittsburgh, Pa., for plaintiff.

Joseph Mack III, Thorp, Reed & Armstrong, Pittsburgh, Pa., Michael Katz, New York City, for defendant.

## OPINION

COHILL, District Judge.

This matter is presently before us on a Motion by Defendant Trans World Airlines, Inc. ("TWA") to Dismiss, or alternatively, for Summary Judgment.

Plaintiff, Gary Schwadron, originally brought this action in the Court of Common Pleas of Allegheny County, Pennsylvania against defendant TWA for the tort of negligent misrepresentation. The action was removed to this court pursuant to 28

U.S.C. § 1441 by reason of diversity of citizenship.

The complaint alleges that plaintiff, a mechanic employed by TWA but on lay-off status, obtained interim employment at Greater Pittsburgh Aircraft Maintenance, Inc. ("Greater Pitt"). The complaint further alleges that on January 31, 1983, while on layoff and employed by Greater Pitt, plaintiff filed a bid with TWA, pursuant to TWA procedures, for a job at the Cleveland, Ohio TWA terminal. TWA employees are represented by the International Association of Machinists and Aerospace Workers ("IAM"); Article 10 of the TWA—IAM Collective Bargaining Agreement ("the Agreement") governs layoffs and recalls and provides that vacancies shall be filled by order of seniority from among employees having bids on file. (Agreement, Art. 10).

On February 16, 1983 TWA allegedly informed plaintiff that he was being recalled immediately for work at the Cleveland, Ohio terminal, and that he was to report on February 28, 1983. Plaintiff thereupon terminated his employment with Greater Pitt. Subsequently, plaintiff was notified that his recall was ineffective because TWA had ascertained that another employee was entitled to the job. Plaintiff attempted to notify Greater Pitt, but his job had already been filled.

Plaintiff then filed a grievance through his union, the IAM, against TWA and proceeded through two steps of a four-step grievance procedure. At both stages, plaintiff's grievance was denied for the stated reason that there had been no violation of the collective bargaining agreement. At the third stage, the union withdrew plaintiff's grievance. Plaintiff then filed this action for negligent misrepresentation, seeking damages for the loss of income and benefits from his job at Greater Pitt.

Defendant TWA has moved to dismiss the Complaint, or, alternatively, for summary judgment, on the grounds that this Court's jurisdiction is preempted by the provisions of the Railway Labor Act, 45 U.S.C. § 151 *et seq.* We will dismiss the Complaint for lack of subject matter jurisdiction since we find that the provisions of the Railway Labor Act, providing a scheme of exclusive administrative grievance procedures and remedies, preempts plaintiff's state tort action for negligent misrepresentation.

## The Railway Labor Act

In 1936, Congress extended coverage of the Railway Labor Act to the air transportation industry. 45 U.S.C. § 181 *et seq.* Section 151 of the Act provides, in part, that its purpose shall be

> (4) to provide for the prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions; (5) to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions.

45 U.S.C. § 151a.

Section 3 of the Act requires that all disputes between a railroad employee and carrier growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions be submitted to the National Railroad Adjustment Board, or a system board if one is established. 45 U.S.C. § 153. Section 204 of the Act provides for mandatory air carrier system boards of adjustment as the method for resolving "minor disputes" between airline employees and air carriers. 45 U.S.C. § 184. These so-called "minor disputes" were defined by the United States Supreme Court as [those]

> involving grievances, [which] affect the smaller differences which inevitably appear in the carrying out of major agreements and policies or [which] arise incidentally in the course of an employment. They represent specific maladjustments of a detailed or individual quality ... [b]ecause of their comparatively minor character and the general improbability of their causing interruption of peaceful relations and of traffic, the 1934 Act sets them apart from the major disputes and provides for very different treatment.

*Elgin, Joliet & Eastern R. Co. v. Burley,* 235 U.S. 711, 724, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886 (1945). The arbitration provisions for minor disputes are mandatory, and preempt state remedies. *Andrews v. Louisville & N.R.R.,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972).

## DISCUSSION

■ Plaintiff argues that this action is not preempted by the Railway Labor Act because his tort claim is not in the nature of a "minor dispute" which would be governed by the arbitration provisions of 45 U.S.C. § 153(i). Plaintiff asserts that because he does not allege any violation of the collective bargaining agreement, his action is not in the nature of a labor controversy which requires federal preemption. (Plaintiff's Brief in Opposition to Motion to Dismiss, at 4). We disagree, and hold that plaintiff's claim is in the nature of a "minor dispute" and, as such, is preempted by the provisions of the Railway Labor Act.

As the Supreme Court explained in *Elgin, Joliet & Eastern R. Co., supra,* the class of minor disputes "contemplates the existence of a collective bargaining agreement already concluded ... [t]he dispute relates either to the meaning or proper application of a particular provision with reference to a specific situation." 325 U.S. at 723, 65 S.Ct. at 1290. The complaint and plaintiff's affidavit reveal that the gravamen of this action stems from the mistaken recall by TWA. It was this event which led to the unfortunate circumstances under which plaintiff resigned from his job at Greater Pitt. Plaintiff made the mistaken recall the subject of his grievance. As in the case of *Magnuson v. Burlington Northern, Inc.,* 413 F.Supp. 870 (D.Mont. 1976), *aff'd,* 576 F.2d 1367 (9th Cir.), *cert. denied,* 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978), where the plaintiff alleged malicious and intentional infliction of emotional distress in connection with his discharge, the allegedly tortious act of TWA was governed by the collective bargaining agreement or had a not insubstantial relationship to the labor contract. *See id.,* 576 F.2d at 1369–70. In this case,

TWA was proceeding under the layoff/recall provisions of the collective bargaining agreement when it mistakenly recalled plaintiff. *See* Agreement, Art. 10.

Numerous courts have held state tort claims to be "in essence and substance" employment grievances and preempted by the Railway Labor Act. *See Jackson v. Consolidated Rail Corp.,* 717 F.2d 1045, 1048–53 (7th Cir.1983) (harassment and intentional infliction of emotional distress); *Schroeder v. Trans World Airlines, Inc.,* 702 F.2d 189 (9th Cir.1983) (wrongful demotion); *Choate v. Louisville & N.R. Co.,* 715 F.2d 369 (7th Cir.1983) (intentional and reckless infliction of emotional distress); *Beers v. Southern Pac. Trans. Co.,* 703 F.2d 425, 429 (9th Cir.1983) (same); *Brown v. American Airlines, Inc.,* 593 F.2d 652 (5th Cir.1979) (breach of alleged settlement agreement); *De La Rosa Sanchez v. Eastern Airlines, Inc.,* 574 F.2d 29, 31–32 (1st Cir.1978) (malicious deprivation of pension benefits); *Bernhardt v. American Airlines, Inc.,* 511 F.2d 1219 (9th Cir.1975) (conspiracy and civil rights violation); *Majors v. U.S. Air, Inc.,* 525 F.Supp. 853, 857 (D.Md.1981) (false imprisonment and defamation); *Carson v. Southern Ry. Co.,* 494 F.Supp. 1104 (D.S.C.1979) (defamation, accusation of drinking on duty); *Magnuson v. Burlington Northern, Inc.,* 413 F.Supp. 870 (D.Mont.1976), *aff'd,* 576 F.2d 1367 (9th Cir.), *cert. denied,* 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978) (intentional infliction of emotional distress); *Pandil v. Illinois Central Gulf R.R.,* 312 N.W.2d 139, 143 (Iowa App.1981) (wrongful denial of recall from furlough status).

We find plaintiff's attempts to distinguish this case as one not involving a discharge and as not brought under the contract unpersuasive. The collective bargaining agreement governs recall procedures and plaintiff was still covered by the agreement while on furlough status.

■ We further hold that the exception to the preemption doctrine established in *Farmer v. United Brotherhood of Carpenters,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977) is inapplicable. *Farmer*

permitted an action for damages to be maintained against certain union officials for abuse, harassment and "outrageous" conduct arising out of an internal union leadership dispute. The Court held that for a state action to survive, the state must have a substantial interest in the regulation of the conduct at issue, and that interest must not threaten undue interference with the federal regulatory scheme. 430 U.S. at 302, 97 S.Ct. at 1064. Further, the Court of Appeals for the Ninth Circuit in *Magnuson* has characterized *Farmer* as constituting a "narrow exception" to federal preemption, applicable to a case involving interests of merely peripheral concern under federal law, but not applicable to a case "based on a matrix of facts which are inextricably intertwined with the grievance machinery of the collective bargaining agreement and of the R.L.A." 576 F.2d at 1369. In *Majors v. U.S. Air, Inc.*, 525 F.Supp. 853 (D.Md.1981), the Court held that the conduct on which plaintiff's claims for false imprisonment and defamation were based was not "sufficiently aggravated in nature so as to fall within the *Farmer* doctrine," *id.* at 856, observing that there were no threats of violence, and that it fell "far short of the prerequisite to recovery in *Farmer*, that the conduct be 'of such substantial or enduring quality that no reasonable man in a civil society should be expected to endure it.' " *Id.* (quoting *Farmer*, 430 U.S. at 294, 97 S.Ct. at 1060). The *Majors* court also observed that *Farmer* was brought under the National Labor Relations Act, which has a more limited scope than that of the mandatory arbitration provisions of the Railway Labor Act, providing for the prompt and orderly settlement of "*all* disputes growing out of grievances...." *Majors*, at 856 (citing 45 U.S.C. § 151a(5) (emphasis added)). We adopt this reasoning as persuasive and applicable to the facts before us.

An appropriate order will follow.

---

1. Other defendants were dismissed on January 6, 1984, on a motion for partial summary judgment. Because the remaining defendant is being sued in his official capacity only, the court also ordered use of his title rather than his name, pursuant to Fed.R.Civ.P. 25(d)(2).

ORDER

AND NOW, to-wit, this 31st day of May, 1984, in accordance with the foregoing Opinion, it is hereby ORDERED, ADJUDGED and DECREED that plaintiff's Complaint be and hereby is DISMISSED pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction.