# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 8, 2011

No. 10-20856
Summary Calendar

Lyle W. Cayce
Clerk

CRAIG P. BOWCOCK,

Plaintiff - Appellant

v.

CONTINENTAL AIRLINES, INC.,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:10-cv-2372

Before REAVLEY, BENAVIDES, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Craig Bowcock appeals the district court's dismissal of his ERISA claims against his former employer, Continental Airlines ("Continental"), for lack of subject matter jurisdiction. We affirm.

## I.    FACTS

Bowcock worked for Continental as a pilot for 22 years. Pilots who fly for Continental are subject to a Collective Bargaining Agreement ("CBA"). On June

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

24, 2008, Continental offered pilots early retirement under a plan called the Early Retirement Window ("ERW"). Bowcock was eligible for early retirement under the ERW. At this time, Bowcock also had an ongoing dispute with Continental regarding an alleged miscalculation of his pension. Bowcock alleges that Continental told him that he would have to abandon his pension claims against the company in order to take early retirement under the ERW. Bowcock alleges that he did not take early retirement under the plan because of Continental's representations. He instead retired a year later, on June 25, 2009.

On July 10, 2010, Bowcock brought this suit in federal district court, alleging that Continental intentionally mislead him into believing that he would have to abandon his pension claims if he took early retirement. He claims that, by doing so, Continental breached its fiduciary duty under ERISA to provide "truthful and complete information in response to his question about an employee benefit plan."

Continental moved for dismissal of Bowcock's claim for lack of subject-matter jurisdiction, arguing that the Railroad Labor Act ("RLA"), 45 U.S.C. §§ 151-88, vested exclusive jurisdiction over "minor disputes" brought by airline employees such as Bowcock with regional adjustment boards. The district court granted Continental's motion, holding that Bowcock's fiduciary duty claim was a "minor dispute" involving the interpretation of a CBA and that Bowcock was an "employee" under the RLA, notwithstanding the fact that he had retired before filing his claim. The court concluded that Bowcock's claim was subject to mandatory arbitration under the RLA and that it therefore lacked subject-matter jurisdiction. Bowcock appeals.

II.    DISCUSSION

The sole issue on appeal before this court is whether Bowcock is an "employee" under the RLA even though he was retired when he filed his federal lawsuit. We review a district court's rulings on questions of statutory

No. 10-20856

interpretations *de novo*. *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 538 (5th Cir. 2009).

"Concerned that labor disputes would lead to strikes bringing railroads to a halt, Congress enacted the . . . RLA . . . in 1926 to promote peaceful and efficient resolution of those disputes." *Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment*, 130 S. Ct. 584, 591 (2009). The RLA, as amended in 1934, requires railroad carriers and their union employees involved in "minor" labor disputes that cannot be resolved under CBA-provided grievance procedures to participate in mandatory arbitration before the National Railroad Adjustment Board ("NRAB"). *Id.*; 45 U.S.C. § 153(i). An "employee" is a "person in the service of a carrier (subject to its continuing authority to supervise and direct the manner of rendition of his service) who performs any work defined as that of an employee . . . ." 45 U.S.C. § 151. A dispute is "minor" if "an existing agreement controls the controversy, *i.e.*, the interpretation or application of a particular provision to a particular situation." *Int'l Ass'n of Machinists & Aerospace Workers, Airline Dist. 146 v. Frontier Airlines, Inc.*, 664 F.2d 538, 540 (5th Cir. 1981); *see Hawaiian Airlines v. Norris*, 512 U.S. 246, 255-56 (1994).

"In 1936, Congress extended the Railway Labor Act to cover the then small-but-growing air transportation industry." *Int'l Ass'n of Machinists, AFL-CIO v. Cent. Airlines, Inc.*, 372 U.S. 682, 685 (1963). The 1936 amendment, codified at 45 U.S.C. §§ 181-88, made all of the provisions of the RLA applicable to the airlines with the exception of the section requiring mandatory arbitration before the NRAB.[1] *Id.* Instead, Congress required air carriers and unions to

---

[1] 45 U.S.C. § 181 states:

All of the provisions of subchapter I of this chapter except section 153 of this title are extended to and shall cover every common carrier by air engaged in interstate or foreign commerce, and every carrier by air transporting mail for or under contract with the United States Government, and every air pilot or

3

create regional adjustment boards. *Id.* at 686; 45 U.S.C. § 184. Air carriers and their employees are required under the RLA to submit minor disputes that cannot be resolved under CBA-provided grievance procedures to these regional adjustment boards. *Id.* The mandatory arbitration language in § 184 is nearly identical to the mandatory arbitration language in § 153.

Central to our discussion is the Supreme Court's decision in *Pennsylvania Railroad Co. v. Day*, 360 U.S. 548 (1959). In *Day*, the Supreme Court considered whether the NRAB had exclusive jurisdiction over a retired locomotive engineer's claim for additional pay. 360 U.S. at 551. The Court held that it did, stating that "[a]ll the considerations of legislative meaning and policy which have compelled the conclusion that an active employee must submit his claims to the Board, and may not resort to the courts in the first instance, are the same when the employee has retired and seeks compensation for work performed while he remained on active service." *Id.* at 552. The district court applied *Day* to Bowcock, holding that "retired employees whose claims arose while they were 'in the service of a carrier'—whether it was an air carrier or a rail carrier—must arbitrate the claims pursuant to the requirements of the RLA."

Bowcock acknowledges the Supreme Court's holding in *Day* but raises three arguments as to why the district court erred in holding that he is an "employee" under the RLA. His arguments fail to persuade. Bowcock first argues that *Day* is distinguishable because it involved arbitration with a rail carrier under § 153 and not arbitration with an air carrier under § 184. But § 181 explicitly extended "[a]ll of the provisions of [the RLA] except section 153 . . . to . . . every common carrier by air . . . ." 45 U.S.C. § 181. This includes § 151, which contains the definition of "employee" interpreted in *Day*. 360 U.S.

---

other person who performs any work as an employee or subordinate official of such carrier or carriers, subject to its or their continuing authority to supervise and direct the manner of rendition of his service.

No. 10-20856

at 551. Section 181 therefore plainly extends the definition of "employee" used in the mandatory arbitration provisions of § 151 to the nearly identical mandatory arbitration provisions in § 184. It would defy logic to have the same statutory definition of "employee" mean two different things based on whether the employer was a rail or air carrier. The fact that Bowcock worked for Continental and not a rail carrier is not a meaningful distinction.

Bowcock next argues that *Day* is distinguishable because the plaintiff in *Day* filed his federal lawsuit before retiring, whereas Bowcock filed his claim after retiring. This is also not a meaningful distinction. *Day* explicitly concluded that "an active employee must submit his claims to the Board, and may not resort to the courts in the first instance," when "the employee has retired and seeks compensation for work performed while he remained on active service." *Id.* at 552. Otherwise, "[r]etired employees would be allowed to bypass the Board specially constituted for hearing railroad disputes whenever they deemed it advantageous to do so, whereas all other employees would be required to present their claims to the Board." *Id.* at 553. Both the Court's holding and its reasoning apply with equal force regardless of whether the employee retires before or after he files his federal lawsuit, so long as he "seeks compensation for work performed while he remained in active service." *See Air Line Pilots Ass'n, Int'l v. Alaska Airlines, Inc.*, 735 F.2d 328, 329 (9th Cir. 1984).

Bowcock finally argues that this court should not apply *Day* to airline retirees because "*Day*'s approach to statutory construction is outdated." In essence, Bowcock argues that *Day* is wrongly decided and would be decided differently by today's Supreme Court. We are a strict *stare decisis* court. *FDIC v. Abraham*, 137 F.3d 264, 268 (5th Cir. 1998). The Supreme Court has unequivocally stated that "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this

Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989). Bowcock's assertion that "today's Supreme Court" would not adopt *Day*'s reasoning is irrelevant.

We therefore hold that, under *Pennsylvania v. Day,* retired employees of air carriers are "employees" subject to the mandatory arbitration provisions of the RLA. In doing so, we are in accord with all other courts of appeal that have addressed this issue. *Bloemer v. Nw. Airlines, Inc.*, 401 F.3d 935, 939 (8th Cir. 2005); *Air Line Pilots Ass'n*, 735 F.2d at 328. Because Bowcock was an "employee" subject to the RLA's mandatory arbitration provisions, the district court correctly dismissed his case for lack of subject matter jurisdiction.

III.    CONCLUSION

For the foregoing reasons, we affirm the district court's dismissal of Bowcock's complaint.